# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**KABIL ANTON DJENASEVIC,**

      **Petitioner,**

v.

                                **CASE NO. 8:15-cv-914-T-27MAP**
                                **CRIM. CASE NO. 8:2-cr-424-T-27MAP**

**UNITED STATES OF AMERICA,**

      **Respondent.**

_____/

## ORDER

**BEFORE THE COURT** are Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV Dkt. 1), three affidavits in support (CV Dkts. 2, 5, 6), the Government's response (CV Dkt. 7), Petitioner's reply (CV Dkt. 44), and two documents filed by Petitioner as "Correspondence." (CV Dkts. 45, 73).[1] Upon review, Petitioner's Section 2255 motion is **DENIED**.

### Procedural Background

Petitioner was charged with conspiring to possess with intent to distribute 100 grams or more of heroin (Counts One and Four) and possessing heroin with intent to distribute it (Counts Two and Three). (CR Dkt. 1). He was later charged with an additional count, possession of a firearm by a convicted felon (Count Five). (CR Dkt. 5).

---

[1] Petitioner's correspondence (CV Dkts. 45, 73) does not comply with Local Rule 3.01(f), M.D. Fla., which prohibits parties from filing applications to the Court "in the form of a letter or the like." Moreover, the documents were filed by Petitioner while he was represented by counsel and therefore constitute unauthorized *pro se* filings. *See* Local Rule 2.03(d), M.D. Fla. ("Any party for whom a general appearance of counsel has been made shall not thereafter take any step or be heard in the case in proper person, absent prior leave of Court."). Accordingly, those filings are **STRICKEN**.

While on bond on state charges, Petitioner left the country and was thereafter extradited from South Africa. (CR Dkt. 8; CR Dkt. 411 at 102–04). On December 15, 2003, Petitioner pleaded guilty without a plea agreement to all five counts. (CR Dkt. 32). He subsequently moved to withdraw his guilty plea, which was denied. (CR Dkts. 38, 48). Following the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004), he moved again to withdraw his guilty plea. After oral argument, his motion was granted. (CR Dkts. 52, 66).

Prior to trial, Petitioner moved to suppress evidence seized by law enforcement. (CR Dkt. 95). Following a hearing on July 28, 2005, the motion was denied. (CR Dkts. 113, 116). On August 1, 2005, the morning of trial, Petitioner pleaded guilty without a plea agreement. (CR Dkt. 125). Less than a month later, his attorney, David Weisbrod, filed a motion to withdraw, which was denied. (CR Dkts. 128, 130, 131). Approximately two weeks later, Weisbrod moved again to withdraw. His request was granted, and Petitioner was appointed new counsel. (CR Dkts. 138, 139, 141).

Petitioner's new attorney, Patrick Doherty, filed a motion to withdraw the second guilty plea, which was denied. (CR Dkts. 142, 146). Petitioner was sentenced to 324 months in prison on Counts One and Four, 240 months on Counts Two and Three, and 120 months in prison on Count Five, all concurrent. (CR Dkt. 160). His convictions and sentences were affirmed. (CR Dkts. 167, 249); *United States v. Djenasevic*, 248 F. App'x 135 (11th Cir. 2007).

Petitioner filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, which was denied. (CR Dkts. 260–63). On appeal, the Eleventh Circuit reversed, finding ineffective assistance of counsel where, contrary to Petitioner's request, Attorney Weisbrod did not move to

withdraw the guilty plea based on a violation of Rule 11, Federal Rules of Criminal Procedure. *See Djenasevic v. United States*, 425 F. App'x 834, 836–37 (11th Cir. 2011).

On remand, Petitioner's conviction and sentence were vacated, and the case was set for trial. (CR Dkts. 283, 288). Through counsel, Petitioner moved to suppress the same physical evidence addressed in the 2005 motion to suppress and also moved for rehearing on the 2005 motion. After a hearing, the motions were denied on grounds, among others, that relitigation of the prior decision was not justified. (CR Dkts. 290, 299, 319, 322, 407). Petitioner then moved to suppress statements he made after his arrest, claiming the statements were not voluntary. (CR Dkt. 318). Following a hearing, that motion was denied. (CR Dkts. 347, 408). Approximately a month before trial, his attorney moved to withdraw, citing disagreement with Petitioner over how to proceed with the case. (CR Dkt. 333). After a hearing, the motion was denied. (CR Dkts. 339, 340).

The case proceeded to trial, and Petitioner was found guilty as charged. (CR Dkts. 360–373). He was sentenced to 292 months in prison on Counts One and Four, 240 months on Counts Two and Three, and 120 months on Count Five, all concurrent, followed by 60 months of supervised release. (CR Dkts. 392, 393). His convictions and sentences were affirmed. (CR Dkt. 427); *United States v. Djenasevic*, 545 F. App'x 946 (11th Cir. 2013). His petition for writ of certiorari was denied. (CR Dkt. 430); *United States v. Djenasevic*, 134 S. Ct. 1953 (2014).

In the instant motion, Petitioner moves to vacate, set aside, or correct his sentence under Section 2255. (CV Dkt. 1). His motion and pleadings are not clearly grouped into distinct grounds for relief, but will be addressed as follows:

1. Counsel failed to investigate case facts, evidence, and a viable defense (CV Dkt. 1 at 4; CV Dkt. 5 at 4, 19); failed to present exculpatory evidence at pretrial hearings and at trial (CV Dkt. 1 at 4); failed to cross-examine witnesses or present

3

inconsistencies in the evidence to the jury (CV Dkt. 1 at 4; CV Dkt. 5 at 7, 19); and failed to present defense witnesses (CV Dkt. 1 at 4);

2.  Counsel failed to file pretrial motions (CV Dkt. 1 at 5);

3.  Counsel failed to object to evidence and testimony, failed to object during the prosecutor's opening and closing statements, and failed to object to the presence of law enforcement at the prosecution table during the trial (CV Dkt. 5 at 4–5);

4.  Prosecutorial misconduct (CV Dkt. 2 at 10, 14, 15, 17; CV Dkt. 5 at 7, 15);

5.  The court erred in refusing to reconsider its denial of his motion to suppress evidence, and erred by refusing to appoint a new attorney (CV Dkt. 5 at 9; CV Dkt. 44 at 6–7);

6.  Counsel failed to raise objections to the presentence investigation report (PSR) (CV Dkt. 1 at 4); and

7.  Counsel failed to confer with Petitioner (CV Dkt. 1 at 4).[2]

<u>Discussion</u>

A two-part test applies in analyzing ineffective assistance of counsel claims. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). According to *Strickland*, Petitioner must:

> [f]irst, . . . show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

---

[2]  Petitioner also contends that his counsel was ineffective for "fail[ing] to investigate . . . the police-substation where [he] was illegally taken against his will, after being held chained [for] over 7 hours in a marked police car" (CV Dkt. 5 at 4) and "for not questioning the police and county jail where [he] was stripped naked and left in a cold cell without any bedding or clothing for ten (10) days and exposing the torturous treatment he received." (CV Dkt. 5 at 7).

However, these allegations essentially challenge the conditions of his confinement rather than his conviction and sentence and are therefore not cognizable on habeas review. *See Nelson v. Campbell*, 541 U.S.637, 643 (2004) (explaining that claims challenging conditions of confinement fall outside the " 'core' of habeas corpus" and may be raised in a civil rights action under Title 42 United States Code Section 1983).

4

*Id.* And relevant to Petitioner's hindsight criticism of his attorney, the test for ineffective assistance claims:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir.2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. And, therefore, omissions are inevitable. [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Petitioner bears the burden to overcome "the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions. The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688 (internal citation omitted).

1.  **Failure to Investigate, Present Evidence and Witnesses, and Cross-Examine the Prosecution's Witnesses**

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U .S. at 691. Additionally, "[c]ounsel has a duty to interview potential witnesses and make an independent examination of the facts,

circumstances, pleadings and laws involved." *Rummel v. Estelle*, 590 F.2d 103, 104 (5th Cir.1979) (internal quotations omitted). Notwithstanding, "[e]ven if a decision not to investigate appears unwise in hindsight, [a court] will not hold it to have been ineffective assistance unless the decision was 'so patently unreasonable that no competent attorney would have chosen it.' " *Rizo v. United States*, 662 F. App'x 901 913–14 (11th Cir. 2016) (quoting *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (citation and internal quotation marks omitted)).

The decision about "which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [the court] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir.1995). Relevant here, disagreement by Petitioner with his attorney's tactics or strategies will not support his claim of ineffective assistance of counsel. He must overcome the presumption that the challenged conduct was a matter of strategy. *Strickland*, 466 U.S. at 689; *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.1990). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.1994).

A.    The Condominium and Safe Deposit Box

Several of Petitioner's allegations relate to the searches of Helen Mafilas's[3] condominium and a First Union Bank safe deposit box, which he contends were illegal because they were conducted without a warrant, and, as he alleges, without consent. Regarding Mafilas's condominium, he argues that photos taken by Mafilas would have contradicted police assertions that the search was

---

[3] At the time of the search, Mafilas was Petitioner's girlfriend. They subsequently married.

conducted with his consent and that there was no forced entry or damage. He also argues that the photos would have been relevant to discrediting police testimony at the 2005 and 2012 suppression hearings and trial. And he contends that Armstrong should have investigated the alleged damage caused by the search by interviewing condominium staff and requesting the work order for the door that was replaced after the search. (CV Dkt. 2 at7, 15–21; CV Dkt. 5 at 6–7, 14–15).

Petitioner also contends that his attorney should have called Mafilas as a witness (or used her testimony from the 2005 suppression hearing) at the 2012 suppression hearing and trial. He argues that her testimony would have contradicted assertions that consent was obtained to search the condominium and safe deposit box. (CV Dkt. 2 at 15–21; CV Dkt. 44 at 6). And he contends that his attorney should have investigated video footage from Bank of America and First Union Bank, interviewed Bank of America personnel, and called Lydia Baruch, a First Union Bank employee, as a trial witness.[4] (CV Dkt. 2 at 21, 29; CV Dkt. 5 at 4; CV Dkt. 44 at 6). Further, he challenges inconsistent statements by law enforcement regarding whether he gave written or oral consent to search the condominium, what happened to the key to the condominium after it was allegedly used to provide entry for the search, and whether Geer threatened to arrest Mafilas if Petitioner did not cooperate. (CV Dkt. 2 at 7, 11, 16; CR Dkt. 410 at 112–16, 129, 166–68; CR Dkt. 411 at 57, 141–44, 147–48).

---

[4] Petitioner contends that while at First Union Bank with law enforcement, he was sick, unable to stand, and stumbled and fell, striking his head and shoulders on the ground. (CV Dkt. 2 at 8, 16; CR Dkt. 408 at 100). Officer Geer confirmed that Petitioner tripped and fell while being escorted at the bank, attributing the fall to the leg irons with which Petitioner was restrained. (CR Dkt. 408 at 66). Presumably, Petitioner sought video footage from the First Union Bank to support his version of the events that occurred there. He also contends that Lydia Baruch, a First Union Bank employee, would have testified to his physical state at the time she saw him at the bank and would have testified that he did not have a safe deposit box there. (CV Dkt. 2 at 21). However, it is not clear why Petitioner sought the video footage or wanted witnesses to his visit with law enforcement to Bank of America, as he merely states that after Agent Geer searched Bank of America records with the help of a bank employee, Geer determined Petitioner did not have a safe deposit box there. (CV Dkt. 2 at 11).

7

Petitioner's arguments are foreclosed by the Eleventh Circuit's decision affirming his conviction, which held that this court did not err in finding that Petitioner voluntarily consented to the search of the condominium and safe deposit box. *See United States v. Djenasevic*, 545 F. App'x 946, 948–949 (11th Cir. 2013). Because the issue of consent to the searches was resolved on direct appeal, Petitioner cannot now reformat the issue as one of ineffective assistance of counsel. *See United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (quoting *United States v. Natelli*, 553 F.2d 5, 7 (2d Cir.1977)) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255.").[5]

With respect to Petitioner's contention that Attorney Armstrong should have called Malifas as a witness, or introduced her prior testimony, Armstrong explains that the photographs did not clearly show a cracked or broken door frame, as Petitioner contends, and that he was concerned about Mafilas' credibility. He discussed this with Weisbrod, who shared his opinion, and determined not to introduce the photographs or call Mafilas. (CV Dkt. 27 Ex. 2 at 5–6). A reasonable attorney would have reached the same conclusion. And his decision about whether to call her as a witness "is the epitome of a strategic decision," and will not be second guessed, regardless of Petitioner's opinion. *Waters v. Thomas*, 46 F.3d at 1512. An evidentiary inquiry is unnecessary, since Petitioner's hindsight criticism addresses only Armstrong's strategic decisions.

---

[5] The Eleventh Circuit noted that the photographs of the condominium were not entered into evidence at the 2005 suppression hearing, *United States v. Djenasevic*, 545 F. App'x 946, 949 (11th Cir. 2013). Petitioner's claim of ineffective assistance in that regard (CV Dkt. 2 at 19–20) is, however, without merit, as he cannot demonstrate prejudice resulting from Attorney Weisbrod's failure to introduce the photographs during the suppression hearing. This court found Petitioner's and Mafilas' testimony less credible than the testimony of the law enforcement officers. (CR Dkt. 116). Petitioner has not demonstrated that the photographs would have overcome that finding.

8

Moreover, Armstrong explains that the photographs and testimony about the state of the condominium following the search was not relevant to the 2012 suppression hearing, as the purpose of that hearing was to resolve Petitioner's motion to suppress his *statements*, not the physical evidence. (CV Dkt. 27 Ex. 2 at 4). As Armstrong explains,

> [t]he issues in the motion to suppress statements were[:] 1) Djenasevic's statements were involuntary because he was in the throes of withdrawal from heroin at the time he made the statements[,] . . . 2) that he was coerced to make the statements because of threats made regarding his girlfriend, Helen Mafilas[,] and 3) violations of his Fifth and Sixth Amendment rights.

(CV Dkt. 27 Ex. 2 at 4; *See also* CR Dkt. 318). In support of those contentions, Armstrong presented, among other evidence, medical records from the Pinellas County jail demonstrating Petitioner's heroin withdrawal symptoms, statements from law enforcement witnesses on cross-examination regarding Petitioner's withdrawal symptoms, and testimony from Petitioner. (CR Dkt. 408 at 62–27, 78–80, 96–100, 113, 120–21).[6]

Although Petitioner contends that Mafilas's testimony was relevant to impeaching the law enforcement agents' testimony during the suppression hearing (CV Dkt. 44 at 5), his argument does not support relief. At that hearing, this court found that Petitioner's testimony was not credible:

> Well, let me start by indicating, and I will say this to Mr. Djenasevic, to the extent your version of the facts supports your motion, you lost all credibility when you

---

[6] For example, Agent Geer testified on cross-examination that he told Petitioner that Mafilas was not a target of the investigation. Geer also testified that Petitioner mentioned not feeling well after his arrest, but continually stated that he was ok and could continue. Petitioner, on the other hand, testified that he was feeling sick at the time of the arrest, that he was threatened with the arrest of his girlfriend if he did not cooperate, that when taken to the police substation he had cold sweats and chills, was shaking and vomiting, and needed to use the restroom, that he was monitored in the infirmary the night following his arrest, and that by the time the safe deposit box was searched he was so sick he could hardly stand. (CV Dkt. 27 Ex. 2 at 4–5; CR Dkt. 408 at 62–66, 87–90, 92, 96–101).

> began arguing with the prosecutor, when you were evasive and not answering questions directly.
>
> Candidly, I cannot place any weight on what you tell me. That is a factual finding based on my observations of the demeanor of the witness while testifying, the manner in which he responded to the questions.

(CR Dkt. 408 at 137). Considering this finding, Petitioner has not demonstrated that Mafilas's testimony would have overcome those credibility findings, and therefore cannot demonstrate prejudice from Armstrong's decision not to call her as a witness, or use her prior testimony.

Nor can Petitioner demonstrate that Armstrong's decision not to call Lydia Baruch as a witness was unreasonable. Armstrong maintains that although he could not recall his exact conversation with Baruch, her testimony would not have helped the defense. He explains that despite witnessing Petitioner sign the consent form, "she opened the [safe deposit] box after [Petitioner] signed[,] suggesting that she believed his consent was voluntary." (CV Dkt. 27 Ex. 2 at 7). Again, Armstrong's decisions not to introduce the photographs or Mafilas's testimony, and not to call Baruch as a witness, fall within the bounds of reasonable trial strategy that will not be second-guessed, or be subjected to evidentiary scrutiny.

### B.    Law Enforcement Buy Money

Another aspect of Petitioner's arguments relate to the "buy money" used by undercover law enforcement officers to purchase heroin from Petitioner and his associate, Richard Barthel. He contends that his trial counsel should have investigated and presented to the jury discrepancies in law enforcement records for the money used to purchase the heroin. (CV Dkt. 2 at 6, 8, 9, 29–30; Dkt. 5 at 12, 17–18; Dkt. 44 at 2). Specifically, he notes that law enforcement maintained that $1400 in

10

marked money from drug transactions on December 23 and 28, 2000, was found in the safe deposit box at First Union Bank. (CV Dkt. 2 at 8; CR Dkt. 411 at 12, 42–51). He argues that: (1) the money could not have been from the transactions on December 23 and 28, 2000, since the last recorded entry to the safe deposit box was December 19, 2000 (CV Dkt. 2 at 8, 12; CV Dkt. 1 Ex. 1 at 2), and (2) the police form for the recorded buy money noted that the money was used December 28, 2000, but the original notation was crossed out and December 5, 2000, was subsequently written in. (CV Dkt. 2 at 9). Petitioner also contends that the sums recovered did not match the amounts claimed to have been used by law enforcement, and the money was identified on January 5, 2001, but the report of that identification was dated January 4, 2001. (CV Dkt. 5 at 12–14). Finally, he argues that the money came from lawful sources, an inheritance and the sale of a business, and that his attorney erred by not eliciting that fact during trial. (CV Dkt. 2 at 12).

The trial transcript reveals that Armstrong addressed these issues at trial. Among other things, on cross-examination of Major Morman, who assisted in the search of the safe deposit box, Armstrong raised the issue of the alternate dates found on the form used to reconcile the buy money with the money found in Petitioner's possession. Morman acknowledged that a date other than December 5, 2000 could have been written on the form, but that he could not clearly make it out and that the December 5, 2000 date was written by him. (CR Dkt. 410 at 163, 178). Armstrong also addressed the date discrepancy in his closing argument, along with evidence that serial numbers on the buy money did not match police records. (CR Dkt. 412 at 34–36). It is apparent therefore, that

Armstrong investigated and raised discrepancies related to the buy money at trial, contrary to Petitioner's assertions.[7]

C.    Petitioner's Arrest

Petitioner next focuses on what he perceives to have been errors by his attorney relating to the location of and circumstances of his arrest. Specifically, he asserts that he made a recorded phone call to Barthel after his arrest which would establish that no sale of heroin occurred at the Amoco station, but that his counsel did not demand that the call be produced. (CV Dkt. 2 at 12; CV Dkt. 5 at 4). He also challenges a call made by Barthel to arrange the purchase of heroin from Petitioner at the Bennigans (CV Dkt. 44 at 7), and argues that his attorney failed to investigate the location of and witnesses to this, and whether or not he sold heroin to Barthel immediately before his arrest. (CV Dkt. 2 at 6; CV Dkt. 5 at 4, 14, 19).

Notwithstanding, these contentions do not support relief. Although he contends that he was to meet Barthel at the Amoco, rather than Bennigans, (CV Dkt. 2 at 6; CV Dkt. 5 at 4, 14), Petitioner does not contest that he arranged to meet with Barthel on January 3, 2001, and that he was arrested at Bennigans that day. And Armstrong cross-examined Barthel, Agent Geer, and Major Morman about the location where Petitioner was to meet Barthel that day. (CR Dkt. 410 at 85–86, 170–71; CR Dkt. 411 at 105–06). And, although Detective Jones testified that Petitioner sold heroin to Barthel on January 3, 2001 (CR Dkt. 410 at 221), Agent Geer testified "the intention was to arrest

---

[7] And, although Armstrong did not ask Agent Geer or Major Morman about Petitioner's claim that the money in the safe deposit box was from a lawful source, the prosecution elicited on redirect examination of Agent Geer that Petitioner claimed the money in the safe deposit box was "part of an inheritance, part of the proceeds of a pizzeria restaurant in New York that was sold." (CR Dkt. 411 at 154–55). Even if Petitioner could establish error on the part of Armstrong for not inquiring into this at trial, he cannot establish prejudice, since the jury was made aware of Petitioner's claim that the money was lawfully obtained.

[Petitioner] ... before contact [with Barthel] was made," and that he could not recall if Barthel was present. (CR Dkt. 411 at 106–07). It is, therefore, evident that Armstrong had investigated the discrepancies pointed out by Petitioner and cross-examined the witnesses about them.

### D. Remaining Cross-Examination Issues

Petitioner contends that Armstrong failed to sufficiently cross-examine witnesses on several additional perceived inconsistencies or false statements. Specifically, he challenges: (1) Major Morman's Grand Jury and trial testimony that the December 23, 2000 transaction involved Detective Jones. Petitioner contends that Jones was not present, and that the law enforcement-recorded calls were the means used to set up meetings between Barthel and Petitioner (CV Dkt. 2 at 28; CV Dkt. 5 at 12; CR Dkt. 410 at 155–56; CR Dkt. S-25 at 5–7, 9); (2) the identity of Barthel's source of heroin (CV Dkt. 2 at 28; CV Dkt. 5 at 12–13; CV Dkt. 44 at 7; CR Dkt. 410 at 88–99; CR Dkt. S-25 at 4–5); and (3) the location on December 28, 2000 of a vehicle purportedly owned by Petitioner. (CV Dkt. 5 at 13; CR Dkt. 410 at 201–02).

Contrary to Petitioner's claims, Armstrong addressed many of these inconsistencies. For example, on cross-examination, he elicited from Detective Jones a clarification that he did not meet or otherwise make contact with Petitioner on December 23, 2000, since he remained in the vehicle during the transaction. (CR Dkt. 410 at 221). He also questioned Barthel about his source of heroin in an attempt to establish that his source was someone other than Petitioner. (CR Dkt. 410 at 88–99). Ultimately, Barthel testified on cross-examination that "Chino"[8] was his source of cocaine, but not

---

[8] According to Petitioner, Chino is also known as Raymond Velasquez. (CV Dkt. 2 at 25; CV Dkt. 5 at 5).

heroin;[9] that Antoinette Bacon was his original source of heroin; and that he stopped buying from Bacon about two weeks before he started buying from Petitioner (who was known to Barthel as Lucky"). (CR Dkt. 88–90, 96).

While Armstrong may not have asked the exact questions or all of the questions suggested by Petitioner, the decision of what questions to ask on cross examination is inherently a matter of trial strategy, and Petitioner fails to show that Armstrong's trial strategy was unreasonable. *See Chandler v. United States*, 218 F.3 d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable.... [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (quoting *Burger v. Kemp*, 483 U.S. 776, 794, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987)). Moreover, Petitioner fails to demonstrate how Armstrong's cross-examination of the witnesses prejudiced him. *See United States v. Irby*, 103 F.3d 126 (5th Cir. 1996) (unpublished) (denying ineffective assistance claim based on counsel's failure "to adequately cross-examine a number of government witnesses" because petitioner "fail[ed] to set forth ... the possible impact of any additional cross-examination"). Armstrong's cross-examination will not be second-guessed.

The record demonstrates that Armstrong conducted a reasonable investigation and cross examined the Government's witnesses reasonably and effectively. In sum, Petitioner has not

---

[9] Petitioner faults Mr. Armstrong for failing to call Chino as a witness at trial. Although he claims Chino would have testified that he, rather than Petitioner, supplied Barthel with heroin (CV Dkt. 2 at 21), Armstrong avers that, as a drug dealer and convicted felon, Chino's "testimony would have only discredited [Petitioner] and his defense." (CV Dkt. 27 Ex. 2 at 7). Armstrong decision not to call Chino was a reasonable tactic. A reasonable lawyer could have come to the same conclusion and made the same strategic decision. *See White*, 972 F.2d at 1220-21.

demonstrated that Armstrong failed to conduct a reasonable investigation, was deficient in his cross examination of he witnesses, was ineffective in presenting a defense, or that he was prejudiced by any claimed errors.

## 2.    Failure to File Pre-Trial Motions

Petitioner contends that his Armstrong failed to file the following pretrial motions: to dismiss the indictment (CV Dkt. 5 at 5, 6); for a *Franks* hearing (CV Dkt. 2 at 29; CV Dkt. 5 at 5); to suppress evidence (CV Dkt. 5 at 4, 5, 19); to compel discovery (CV Dkt. 5 at 5); to inspect and test physical evidence (CV Dkt. 5 at 5); for a bill of particulars (CV Dkt. 5 at 5–6); and to interview the jury (CV Dkt. 5 at 18).

### A.    Motion to Dismiss Indictment

Petitioner contends that Armstrong erred by failing to file a motion to dismiss the indictment. (CV Dkt. 5 at 5, 6). He claims "violation of the Extradition Treaty and fair treatment in accordance with the treaty[] and International Laws." (CV Dkt. 5 at 6). However, he fails to articulate how his rights under the treaty or international laws were violated. And he relies on his *pro se* motion to dismiss that was improperly filed while represented by counsel (CV Dkt. 330), which was stricken (CV Dkt. 334), his motion to dismiss his counsel (CV Dkt. 332), and an order on a different motion to dismiss which denyied the motion as untimely. (CV Dkt. 429). However, these citations do not support his claim of ineffective assistance. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that vague, conclusory, or speculative allegations cannot support a claim of ineffective assistance of counsel).

15

Finally, Petitioner contends that Armstrong should have moved to dismiss based on the "illegal method [used] in acquiring jurisdiction" by "use of [a] materially false affidavit . . . where the officers and court in 2005 claimed they had a Bi-lateral Treaty for prisoner transfer, and that Montenegro was an independent sovereign state, to coerce his plea with that concession; and with threats of arresting his wife, Helen, who was caring for their child." (CV Dkt. 5 at 6). Notwithstanding, as explained below, he has not demonstrated that the extradition affidavit was materially false. Moreover, his guilty plea was withdrawn and his conviction and sentence based on that plea were vacated. (CR Dkts. 283, 288). He therefore suffered no prejudice resulting from any claimed deficient performance, and accordingly, has not shown ineffective assistance of counsel for failure to move to dismiss the indictment.

## B.     Motion for *Franks* Hearing

Petitioner contends that Armstrong failed to investigate false statements in Agent Geer's affidavit supporting his extradition and failing to request a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). Petitioner challenges the following statements in the extradition affidavit: (1) that, on December 23, 2000 he handed heroin to Barthel and Detective Jones (CV Dkt. 2 at 4); (2) that, on January 3, 2001, he handed heroin to Detective Jones before being arrested (CV Dkt. 2 at 6); (3) that he told Agent Geer that he used a motel room to store and package heroin for re-sale (CV Dkt. 2 at 7); (4) that he gave written consent to search Mafilas' condo (CV Dkt. 2 at 7, 13; CV Dkt. 5 at 15); and (5) that $1400 from transactions with Petitioner on December 23, 2000, and December 28, 2000, was found in the First Union Bank safe deposit box (CV Dkt. 2 at 8, 28).

In *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978), the Supreme Court held that,

16

where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Petitioner has not attempted to show that Agent Geer made any inconsistent or false statements recklessly, or knowingly and intentionally, or that the alleged false statements were necessary to the finding of probable cause for his arrest. Agent Geer conceded at trial that Petitioner's consent to search the condominium was not in writing and that his statement to that effect was incorrect. (CR Dkt. 411 at 147). But he explained that, at the time of the statement, he was in London and did not have all of his notes available to him and that the memo containing the statement was merely a draft that was supposed to be reviewed by his colleagues for accuracy. (CR Dkt. 411 at 147–49). And, while he acknowledged there was no written consent, this court found, consistent with the trial testimony, that Petitioner consented to the search of the condominium. (CR Dkt. 116; CR Dkt. 411 at 57; CR Dkt. 422); *United States v. Djenasevic*, 545 F. App'x 946, 948 (11th Cir. 2013).

With respect to his other allegations, Petitioner does not contest that he handed heroin to Barthel, rather than Detective Jones, on December 23, 2000. (CR Dkt. 410 at 187–88). And, even if he did not tell Agent Geer about the existence of the motel room, he does not contest that the motel room was rented under his name. (CR Dkt. 411 at 57–60). At trial, evidence was introduced that $1400 in marked buy money from law enforcement was found in the safe deposit box (even if there

was a discrepancy about the dates the marked buy money was used). (CR Dkt. 411 at 11–13). And, although he claims he did not deliver heroin immediately before he was arrested, he does not contest that heroin was found in his possession when he was arrested. (CR Dkt. 411 at 55, 116).

Accordingly, although Geer's affidavit contained errors, Petitioner has not demonstrated that the errors were intentional or material. He therefore suffered no prejudice from any claimed Armstrong's failure to challenge his extradition or in failure to request a hearing under *Franks v. Delaware*.

C.    Motion to Suppress Evidence & to Compel Discovery

Petitioner contends that Armstrong failed to move to "suppress illegal evidence" (CV Dkt. 5 at 4, 5, 19) and, specifically, failed to move to suppress under Rule 5(a, Fed.R.Crom.P. (relating to initial appearances) and Title 18 United States Code Section 3501(c) (relating to the admissibility of a confession in light of delay in bringing an arrestee before a judge for an initial appearance). (CV Dkt. 5 at 5). He also contends that Armstrong should have moved to compel discovery of recorded conversations between him and Barthel, and between him and Raymond Velasquez. (CV Dkt. 2 at 25; CV Dkt. 5 at 5). He argues that those records, along with Agent Geer's notes, should have been introduced into evidence at trial to prove their existence and "to prove the perjury that was knowingly presented in the case." (CV Dkt. 5 at 5).

Petitioner does not articulate any basis for suppressing evidence under Rule 5(a), Fed. R. Crim. P., or Section 3501(c). And his claim that Armstrong erred in failing to move to suppress illegal evidence is factually incorrect. Armstrong did move to suppress physical evidence, moved

for rehearing on the 2005 motion to suppress physical evidence, and moved to suppress statements made by Petitioner. (CR Dkts. 290, 299, 322).

To the extent Petitioner argues that Armstrong should have moved to suppress based on "newly turned over evidence[] and raw notes of Agent Geer" (CV Dkt. 5 at 4), and should have moved to compel recorded conversations with Barthel and Velasquez, those arguments are without merit. In his affidavit, Armstrong concedes that Petitioner requested that he file a number of motions, including motions to suppress, compel, and produce evidence, but avers that those motions "were without merit and in [his] opinion frivolous and not helpful to [Petitioner's] defense." (CV Dkt. 27 Ex. 2 at 7–8). As described throughout this Order, Armstrong filed motions to suppress and to compel evidence and cross-examined the Government's witnesses, emphasizing inconsistencies and attacking their credibility. Petitioner has not demonstrated that his performance fell below the wide range of competence expected of a criminal defense attorney. An evidentiary inquiry is unnecessary, as all of these contentions are directed to Armstrong's strategies and trial tactics.

D.     Motion to Inspect and Test Physical Evidence

Petitioner contends that Armstrong failed to file a "motion to inspect[] and test all physical evidence." (CV Dkt. 5 at 5). Although he claims this testing "would have proved multiple variances[] and that this 'evidence' . . . was tainted and false," (CV Dkt. 5 at 5), he does not describe what testing should have been conducted, what physical evidence that should have been tested, what inconsistencies would have been revealed, or how the evidence was tainted or false. His conclusory allegation is insufficient to establish ineffective assistance of counsel. *Tejada*, 941 F.2d at 1559.

F.    Motion for a Bill of Particulars

Petitioner contends that Armstrong should have moved for a bill of particulars to request "the chain of custody of the evidence, pre[-] and post[-]recorded 'marked money', [sic] that was claimed used, and claimed recovered" in relation to the purported discrepancy in the amount of buy money recovered from the condominium and safe deposit box. (CV Dkt. 5 at 5). This contention is without merit. "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Warren*, 772 F.2d 827, 837 (11th Cir. 1985). "Generalized discovery is not the proper function of a bill of particulars." *Id.*

The superceding indictment tracked the language of the statutes alleged to have been violated. It alleged the offense dates, the controlled substance involved, and the firearms. The superceding indictment therefore sufficiently informed Petitioner of the charges against him, minimized surprise, and enabled him to plead double jeopardy in the event of a future prosecution for the same offenses. And it is undisputed that Armstrong obtained extensive discovery from the Government. (*See* CV Dkt. 27 Ex. 2 at 7, describing the nature and volume of discovery). Petitioner has not, therefore, shown that it was objectively unreasonable for Armstrong not to move for a bill of particulars. Nor has he shown that he was prejudiced.

G.    Motion to Interview Jury

Petitioner contends that Armstrong should have moved to interview the jury, asserting that he saw the prosecutor leave the courtroom by the main door, but reenter the courtroom by the door

20

used by the jury. (CV Dkt. 5 at 18). This contention, without more, is nothing more than speculation and is therefore without merit. The door through which the jury entered and exited the courtroom opens to a publicly accessible hallway. Petitioner may not have been aware of this because he was detained. In any event, he fails to allege or demonstrate that any improper interaction between the prosecutor and the jury occurred. His contention is based on speculation, and does not support his claim of ineffective assistance of counsel, either deficient performance or prejudice resulting from deficient performance.

**3.      Failure to Object**

Petitioner contends that Armstrong failed to object during the Government's opening and closing statements, failed to object to Officer Morman's presence at the prosecution table during trial, and generally failed to object to evidence and testimony at trial. (CV Dkt. 5 at 4–5, 18–19). These contentions are without merit.

A.      <u>Opening Statement and Closing Argument</u>

Petitioner argues that Armstrong was ineffective in failing "to object in the . . . Opening and Closing Argument." (CV Dkt. 5 at 19). But he fails to explain what basis there was to object during the opening statement. As for the prosecutor's closing argument, he asserts that the prosecutor "falsely stated to the jury . . . that the December 28, 2000[,] . . . conversation between [Petitioner] and Barthel contained a statement by [Petitioner] that a half kilo was the amount to be purchased[.] [I]n fact, no amount, nor[] any deal agreement was ever consummated in this conversation by [Petitioner]." (CV Dkt. 5 at 18).

21

To determine whether Armstrong was ineffective in failing to object to the prosecutor's argument, a two pronged inquiry is made: (1) "whether the prosecutor's comments were improper;" and, (2) "whether any comments found [to be] improper were so prejudicial as to render the trial fundamentally unfair." *Davis v. Kemp*, 829 F.2d 1522, 1526 (11th Cir. 1987), cert. denied, 485 U.S. 929 (1988). Generally, four factors are considered: (1) whether the challenged comments had a tendency to mislead the jury or prejudice the defendant; (2) whether the comments were isolated or extensive; (3) whether the comments were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof establishing the guilt of the defendant. *United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014). A trial is rendered fundamentally unfair if "there is a reasonable probability that, but for the prosecutor's offending remarks, the outcome . . . would have been different. . . . [A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Kemp*, 846 F.2d 1276, 1283 (11th Cir. 1988), *cert. denied*, 494 U.S. 1090 (1990) (citations and quotations omitted).

Petitioner has not made this showing. Specifically, he has not shown that the prosecutor's comment was improper.[10] The prosecutor's comments in closing statement must be viewed in the context of the trial as a whole. *United States v. Bailey,* 123 F.3d 1381, 1400 (11th Cir.1997). "The purpose of closing argument is to assist the jury in analyzing the evidence, and although a prosecutor may not exceed the evidence presented at trial during her closing argument, she may state

---

[10] To the extent Petitioner maintains that the prosecutor's comment was false or inaccurately described the testimony, his claim nonetheless is without merit. The jury was instructed that counsel's statements were not evidence, that it must base its verdict on the evidence presented, and to resolve any disputes concerning the facts based on the jury's recollection of the evidence. There was, therefore, no prejudice even of the prosecutor's closing argument was inconsistent with the trial testimony and should have been objected to. *See United States v. Garcia*, 683 F. App'x 838, 842 (11th Cir.), *cert. denied*, 138 S. Ct. 197, 199 L. Ed. 2d 133 (2017).

conclusions drawn from the trial evidence." *Id.* Here, the prosecutor's statement accurately described Barthel's testimony that he discussed purchasing a half kilogram of heroin from Petitioner for $18,000. (CR Dkt. 410 at 61). Since the comment was based on the evidence, there was no basis on which to object. Petitioner therefore cannot show that his attorney was ineffective in failing to object.

B.    Presence of Law Enforcement at Prosecution Table During Trial

Petitioner challenges Armstrong's failure to object to Major Morman's presence at the prosecution's table during trial. He takes issue with the court allowing Major Morman "to sit at the prosecution table throughout the whole trial, and on one day in uniform while displaying his medals[,] to hear all the testimony, and then subsequently tailor his testimony, and testify in violation of the rule invoked[.]" (CV Dkt. 5 at 5). This contention is not cognizable on collateral review, as "[a] criminal defendant has no constitutional right to exclude witnesses from the courtroom." *United States v. Edwards*, 526 F.3d 747, 758 (11th Cir. 2008).

C.    Failing to Object to Evidence and Testimony

Petitioner generally argues that Armstrong was "ineffective in not objecting to the evidence[] and testimony presented." (CV Dkt. 5 at 5, 19). However, he provides no further detail as to what evidence or testimony he contends Armstrong should have objected to. This conclusory claim is therefore denied.

**4.    Prosecutorial Misconduct**

Petitioner alleges prosecutorial misconduct, arguing that, along with the allegedly false statements discussed, the prosecution "knowingly stated false material statements to the juries [sic] and presented false evidence to cause an adverse prejudicial effect and determination in this case,

23

violating [his] Constitutional Rights not to be prosecuted with false evidence and in violation of the treaty and international law." (CV Dkt. 5 at 7; *see also* CV Dkt. 5 at 2, 3). And throughout his filings, Petitioner alleges that he was threatened that if he did not cooperate with law enforcement, Mafilas would be arrested. (*See e.g.*, CV Dkt. 2 at 10, 12, 14, 15, 17; CV Dkt. 5 at 15).

Claims of prosecutorial misconduct must be raised on direct appeal. *See McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (citing *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) ("[A] defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding."). Petitioner did not raise a claim of procedural misconduct on direct appeal, and has not demonstrated cause and prejudice for failing to do so, or that he is actually innocent. *See id.* This claim of prosecutorial misconduct is therefore defaulted and denied.

## 5.    Trial Court Error

Petitioner challenges the denial of his request for reconsideration of his 2005 motion to suppress, explaining:

> On September 13, 2005 the Court appointed Attorney Patrick Doherty (Doc. #140). Mr. Doherty filed a motion to withdraw the plea (Doc. #142); that was denied, (Doc. #146) along with his discovery request (Doc. #147). On November 8, 2005 Mr. Doherty filed a motion to the court for "reconsideration" of the court's order, i.e., on Motion to Suppress, along with copy of photographic evidence of the illegal destructive search of Apartment #908, taken by Miss Mafilas, after the illegal search. The judge abused her discretion, and denied the motion, for attorney's "failure to comply with local rule 3.01(a)."

(CV Dkt. 5 at 9). He also appears to claim that this court erred by refusing to appoint a new attorney when he desired that Armstrong withdraw. (CV Dkt. 44 at 6–7).

As with his claims of prosecutorial misconduct, these claims of error are defaulted. Since the denial of his request for reconsideration of his 2005 motion to suppress, Petitioner has been afforded the opportunity to file two direct appeals. He did not raise these arguments in either appeal, and he demonstrates no cause and prejudice for failing to. Nor does he allege actual innocence. He has not therefore overcome his procedural default.

## 6. Objections to the PSR

Petitioner contends that his attorney should have moved for a departure under § 5K2.13 of the Sentencing Guidelines (diminished capacity) and Title 18 United States Code Section 3553(a) (CV Dkt. 2 at 27), and by failing to raise all of the objections to the PSR that he requested. (CV Dkt. 2 at 24–27; CV Dkt. 5 at 6). These claims of ineffective assistance of counsel claims are conclusory and therefore do not support relief. He fails to explain the basis for a departure or point to facts demonstrating that a departure for extreme psychological injury under § 5K2.13 was warranted. Nor has he explained how the factors considered in imposing a sentence in §3553(a)[11] warranted a

---

[11] Section 3553 provides the following factors for consideration in determining the sentence to be imposed:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
>>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

guidelines departure. These conclusory claims are insufficient to demonstrate ineffective assistance of counsel. *See Tejada*, 941 F.2d at 1559.

As for the objections to the PSR he claims Armstrong should have raised, he faults Armstrong for raising only one of his numerous objections, including objections to at least 48 paragraphs in the PSR. (CV Dkt. 2 at 24–28). While Armstrong avers that the objections posed by Petitioner were "similar to those recited in [the Petition]" and that he "did not think that any of those objections were meritorious at that time" (CV Dkt. 27 Ex. 2 at 9), a review of the record demonstrates that none of the objections would have been meritorious. He accordingly has not demonstrated any prejudice resulting from Armstrong's failure to make them.

For example, with regard to paragraphs 40 and 41 of the PSR (sentence adjustments for obstruction and acceptance of responsibility), Petitioner merely "objects to an [o]bstruction of [j]ustice enhancement" and states that he was "entitled to a reduction for [a]cceptance of

---

           (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--

    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

[r]esponsibility." (CV Dkt. 2 at 26). He provides no explanation to support these conclusory arguments, however.

The record demonstrates that, by pleading not guilty, he denied the essential elements of the crimes charged and thereby put the Government to its burden of proof. Accordingly, as this court found, he was not entitled to acceptance of responsibility and his attorney therefore could not have been ineffective in failing to object. And with respect to obstruction of justice, it was undisputed that Petitioner fled the United States and became a fugitive from justice, therevy supporting the obstruction of justice enhancement. [12]

As U.S.S.G. § 3E1.1, comment, n. 2 instructs, the reduction for acceptance of responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *See United States v. Donaldson*, 558 F. App'x 962, 970 (11th Cir. 2014); *United States v. Castillo-Valencia*, 917 F.2d 494, 501 (11th Cir. 1990) (entry of not guilty plea and insistence on a trial are factors that may be considered in deciding whether defendant has accepted responsibility for wrongful conduct). Armstrong could not have been ineffective in not objecting to these sentencing findings and the calculation of the guidelines.

In his objection to paragraph 42 (which describes a case management conference that occurred in May 2003), Petitioner states that "Attorney Kuskie cheated [him] out of $10,500, and

---

[12] The sentencing transcript includes the court's finding that Petitioner was not entitled to acceptance of responsibility (Dkt. 413 at p. 48) (" I have carefully reviewed the enhancements that Mr. Djenasevic alluded to earlier. He has not demonstrated an acceptance of responsibility and he, accordingly, is not entitled to that under 3E1.1. Certainly, the obstruction of justice enhancement is appropriate. The record is undisputed that he fled the United States and was ultimately arrested in South Africa in October of 2002. That conduct did impede or obstruct the administration of justice under Section 3C1.1, and the two-level enhancement is appropriate.

when [he] brought suit it was dismissed . . . without inquiry." (CV Dkt. 2 at 26). But he does not explain how that assertion is relevant to the matters discussed at the May 2003 case management conference or to his sentence. Similarly, he makes the following statement with respect to paragraph 5 of the PSR: "Concerning marked money recovered." (CV Dkt. 2 at 24). However, paragraph 5 recounts his change of plea to "guilty" in December 2003. It is unclear what he means by the objection, and he fails to provide any further explanation.

Regarding paragraph 18, he asserts that he was "victimized by the false statements in the Grand Jury by law enforcement" (CV Dkt. 2 at 25), but does not elaborate on this.[13] With respect to paragraph 30, he claims the search of the residence was illegal (CV Dkt. 2 at 25), but provides no details or argument to support that assertion. He also claims that the allegations in paragraphs 43 and 46 are false (CV Dkt. 2 at 26), but fails to explain why he contends they are false or incorrect. In any event, those paragraphs merely recount aspects of the procedural history of the case. As to paragraphs 59 through 76, which detail his history of criminal convictions, Petitioner states that the New York records are "inaccurate," but does not explain how. (CV Dkt. 2 at 26). And, as to paragraph 94, he objects by explaining that he completed drug counseling in the Bureau of Prisons, but does not indicate when or provide any other details. (CV Dkt. 2 at 27).

In his challenge to the facts summarized in the PSR, Petitioner contends, as he has in other grounds, that he was denied the right to call witnesses such as Mafilas and Velasquez, denied the

---

[13] To the extent Petitioner intended to reference the grand jury testimony previously described, this contention entitles him to no relief. As explained, his attorney cross-examined witnesses at trial on a number of perceived inconsistencies in the evidence, including the source of Barthel's heroin, whether Petitioner met with Detective Jones, and the circumstances surrounding his arrest, among others. It would not have been reasonable for an attorney to attempt to re-litigate those factual inconsistencies at sentencing, considering the jury's verdict.

opportunity to present an entrapment defense (CV Dkt. 2 at 25; *see* PSR at ¶ 16), there are no recorded telephone calls between him and any coconspirators that were produced in discovery (CV Dkt. 2 at 25; *see* PSR at ¶ 24), and Major Morman and Agent Geer testified falsely during various stages of the criminal proceedings, leading to his erroneous indictment and conviction (CV Dkt. 2 at 25; *see* PSR at ¶¶ 31, 48). As explained, Attorney Armstrong actively investigated and addressed inconsistencies in the testimony and evidence, and Petitioner has not shown that he was ineffective in that regard. To the extent he contends that he was denied the opportunity to present an entrapment defense, he does not assert that he ever discussed this desire with Armstrong. Nor does he articulate any prejudice resulting from a failure to pursue the defense.

He also objects to the PSR on grounds that his prior guilty plea was coerced (CV Dkt. 2 at 24; *see* PSR at ¶ 6) and that the searches of the condominium and safe deposit box were undertaken without consent. (CV Dkt. 2 at 25; *see* PSR at ¶¶ 20, 21). Those issues were resolved, the first in his favor, when his guilty plea was withdrawn. And the second by the finding that his consent was voluntarily given.

To the extent Petitioner objects based on the buy money discrepancies discussed above (CV Dkt. 2 at 25; *see* PSR at ¶¶ 13, 21), the amount of heroin attributed to him (CV Dkt. 2 at 26; CV Dkt 5 at 6; *see* PSR at ¶¶ 35, 49), and the firearms possession (CV Dkt. 2 at 26; CV Dkt. 5 at 6; *see* PSR at ¶ 50), these arguments are likewise without merit. As explained, Armstrong cross-examined Major Morman about the buy money discrepancies and discussed them in his closing argument, thereby highlighting the issue for the jury. The jury considered all the evidence and testimony, and concluded in its special verdict that Petitioner possessed with intent to distribute one kilogram or

more of heroin (CR Dkt. 373 at 1). And the jury found Petitioner guilty of possessing the firearms alleged in Count Five of the superseding indictment. (CR Dkt. 373 at 3). In denying Petitioner's motion for judgment of acquittal, this court determined that the prosecution presented sufficient evidence to enable a reasonable jury to find beyond a reasonable doubt that Petitioner was guilty of each charged crime. (CR Dkt. 411 at 194–202).

Moreover, although Petitioner contends that Armstrong failed to challenge the quantity of heroin for which he was held accountable, he is factually wrong. Armstrong argued during the sentencing hearing that the estimated 1.170 kilograms attributed to Petitioner was an inaccurate estimate, as it did not take into account the significant amount of heroin he personally used each day as a long-time heroin addict. (CR Dkt. 413 at 31–39). After Petitioner testified to the estimated quantity of heroin he was using daily between September 2000 and January 2001 (CR Dkt. 413 at 37), the objection was overruled in light of the evidence presented at trial and the jury's special verdict. (CR Dkt. 413 at 40–41).

Regarding paragraphs 22, 23, 25 through 28, and 35 of the PSR, Petitioner contends that there is no record of post-arrest statements made by him, that statements described by law enforcement are uncorroborated and untrue, and that he invoked his constitutional rights and was given immunity by law enforcement. (CV Dkt. 2 at 25, 26). However, his post arrest statements to law enforcement were introduced at trial. Those paragraphs, with the exception of paragraphs 23 and 28, describe his post arrest statements to law enforcement, identify his sources of heroin and other associates, along with a time line of various heroin purchases and transactions, and are consistent

with the evidence presented at trial, including testimony by Barthel, Major Morman, Agent Geer, and others.

The remainder of Petitioner's proposed objections to the PSR simply fail to raise material issues. For example, as to paragraph 12, Petitioner challenges that Barthel did not know him by the name of "Kraja." (CV Dkt. 2 at 24). However, Petitioner does not dispute that Barthel identified him at trial by another alias, "Lucky." (CR Dkt. 410 at 50). As to paragraph 15, he argues he never met with Detective Jones (CV Dkt. 2 at 24), but Detective Jones was not mentioned in that paragraph or in adjacent or related paragraphs.

Regarding paragraph 19, he argues, as he did throughout his petition, that Bennigans was not the location where he arranged to meet Barthel on January 3, 2001. (CV Dkt. 2 at 25). But, he does not dispute that he did arrange to meet Barthel on that date or challenge other portions of that paragraph, including that he was arrested that day and was found to be in possession of heroin when arrested. Similarly, as to paragraphs 32 through 34 and 86, he claims his family was threatened and that he did not flee the United States. But he does not dispute the other information in those paragraphs, including that he was arrested in South Africa and extradited to the United States, or that he has lived in various places in the United States and abroad. (CV Dkt. 2 at 26).

He also contends that he posted more bond than indicated in the PSR (CV Dkt. 2 at 25; *see* PSR at ¶29), notes he has been incarcerated since 2002, rather than 2003, and was imprisoned in 2001 (CV Dkt. 2 at 26; *see* PSR at ¶ 38), states that he "was in constant contact with his wife and child" (CV Dkt. 2 at 26; *see* PSR at ¶ 85), adds ulcers and unspecified neurologic symptoms to the list of his physical ailments (CV Dkt. 2 at 26; *see* PSR at ¶ 89), and challenges a reference to daily

31

cocaine use, but concedes he used cocaine for many years. (CV Dkt. 2 at 26; *see* PSR at ¶ 92). In addition, he states that he was employed between 1994 and 2000 and that he has accrued debt "because of fraud and theft" (CV Dkt. 2 at 27; *see* PSR at ¶¶ 104, 109). But these contentions do not contradict the factual statements in the PSR that the debt exists and that the Social Security Administration has no record of those earnings. (*See* PSR at ¶¶ 104, 109).

None of these factual contentions would have materially altered the PSR, affected the application of the sentencing guidelines, or impacted the sentencing factors under § 3552(a). Simply put, these proposed objections were immaterial and Armstrong was not ineffective in failing to raise them. Since Petitioner has not demonstrated that his proposed objections to the PSR would have been sustained, he cannot demonstrate that Armstrong was ineffective in failing to raise them, or even if so, that he was prejudiced as a result. Accordingly, he has not demonstrated ineffective assistance of counsel, and this claim is denied.

7.    **Failure to Confer and Advise**

Finally, Petitioner generally contends that Armstrong failed to confer with him. (CV Dkt. 1 at 4). He contends that Armstrong was "ineffective in his advice concerning plea, going to trial[,] and preserving rights pre-trial, [and at] trial and sentencing." (CV Dkt. 5 at 6). These vague and conclusory contentions lack any factual support, and are therefore insufficient to establish ineffective assistance of counsel. *See Tejada*, 941 F.2d at 1559.

Petitioner also contends that Armstrong "was ineffective because he did not review case discovery with [Petitioner] prior to trial, or case tape recordings." (CV Dkt. 2 at 21). Petitioner's extensive and active participation in the case belies this claim. The record demonstrates that, while

represented by Armstrong, he filed no fewer than eight *pro se* motions and notices before trial. (*See* CR Dkts. 289, 316, 326, 328, 330, 332, 337, 361). While several were stricken as improper *pro se* filings under Local Rule 2.03(d), that activity demonstrates Petitioner's receipt and understanding of the discovery and progress of the case. (*See e.g.*, CR Dkt. 332, Motion to Terminate Counsel, in which Petitioner described, among other things, additional discovery he believed was necessary based on other discovery materials he reviewed). And Armstrong avers that he "provided [Petitioner] with copies of all of the discovery and spent over 37 hours with him during 26 conferences reviewing discovery, discussing his version of events, preparing and reviewing motions [he] wanted filed [o]n his behalf, and preparing for trial and sentencing." (CV Dkt. 27 Ex.2 at 7). This averment is not disputed by Petitioner by factual averments. Accordingly, this claim is denied.

## Conclusion and Evidentiary Hearing

An evidentiary hearing is not warranted in this case because "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that [Petitioner] is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2003).[14]

I find that all of Petitioner's contentions are either belied by the record, constitute unsupported conclusions, or are frivolous. Specifically, his bullet point list of fourteen alleged failures on the part of Armstrong in his supporting affidavit constitutes nothing more than unsupported conclusions. (Dkt. 5, at pp. 4 - 7, ¶¶ 17 (a) - (n). And his fanciful challenge to virtually every aspect of his prosecution, in the guise of ineffective assistance claims, is no more than an

---

[14] That is the case, notwithstanding Armstrong's affidavit. *See Williams v. United States*, 660 F. App'x 847, 850 (11th Cir. 2016) ("[W]e have held that contested fact issues in [§] 2255 cases cannot be resolved on the basis of affidavits.")

inartful attempt to re-litigate the various issues which were resolved against him during the course of the proceedings.

The court is mindful that it must conduct an evidentiary hearing when a petitioner alleges facts which, if true, would entitle him to relief. 28 U.S.C. § 2255(b). But a petitioner must allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief to trigger the necessity of an evidentiary hearing."*See Scott v. United States*, 325 F. App'x 822, 824 (11th Cir. 2009). Where, as here, allegations are affirmatively contradicted by the record, constitute unsupported conclusions, or the claims are patently frivolous, an evidentiary hearing is not required. *Id*, citing *Aron v. United States*, 291 F.3d 708, 714-15 (11th Cir. 2002).

First, Petitioner has not shown deficient performance. Specifically, he fails to show that Armstrong's performance at any stage of the proceedings included errors so serious that he was not functioning as "counsel" guaranteed by the Sixth Amendment. For the most part, his contentions of error on the part of Armstrong amount to nothing more than hindsight criticisms and challenges to his trial and sentencing strategies. And the record of Armstrong's performance during trial and sentencing belies most, if not all of Petitioner's contentions, as discussed. And there is no showing whatsoever of prosecutorial misconduct.

Second, there is not even a colorable claim that Petitioner was prejudiced by Armstrong's performance, even accepting his contentions as true. As noted, a habeas petitioner claiming ineffective assistance of counsel must succeed on both prongs of the *Strickland* test, deficient performance and prejudice. *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir.2004).To prove prejudice, he must "show that there is a reasonable probability that, but for counsel's unprofessional

34

errors, the result of the proceeding would have been different." *See Saunders v. United States*, 278 F. App'x 976, 979 (11th Cir. 2008), quoting *Strickland v. Washington*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Petitioner makes no showing that he was prejudiced as a result of the claimed errors on the part of Armstrong. Petitioner has not even attempted to make that showing, apparently content to level unsupported criticisms at Armstrong under the assumption that he would be entitled to relief on that alone.[15]

In conclusion, "[a]ccepting as true the facts in [Petitioner's] affidavits, he cannot demonstrate deficient performance or actual prejudice, and is therefore not entitled to an evidentiary hearing or relief on the merits." *Campbell v. United States*, ___ F.3d ___ (11th Cir. 2018), No. 15-13261, June 4, 2018.

Accordingly, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (CV Dkt. 1) is **DENIED** and the two documents filed by Petitioner as "Correspondence" (CV Dkts. 45, 73) are **STRICKEN**. The clerk is directed to enter judgment against Petitioner and close this case.

<u>Certificate of Appealability Denied</u>

A prisoner whose motion to vacate is unsuccessful has no right to appeal the denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a certificate of appealability must first issue. *Id.* "A [COA]

---

[15] While Petitioner's counseled petition and supporting affidavit correctly recites the prejudice component of the *Strickland* test, (Dkt. 1 at p. 23), he fails to explain or attempt to explain how the result of his trial would have been different if Attorney Armstrong had done everything he complains that he failed to do.

may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make that showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.' " *Miller–El v. Cockrell*, 537 U.S. 322, 335–36, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)). Petitioner cannot make that showing. Since he is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** this 8ᵗʰ day of June, 2018.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record; Petitioner *pro se*

36